UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOSTER BUXTON,

    Plaintiff,

v.

HARTIN ASSET MANAGEMENT, LLC,
et al.,

    Defendants.
_____/

Case No. 1:22-cv-600

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Foster Buxton initiated this action against Hartin Asset Management, LLC ("HAM"), DOWAR LLC ("DOWAR"), Derrick C. Warburton II, Jamal D. Harris-Martin, Donald Clemons, Alexis S. Mercer, Carlis M. Pope Jr., Michael B. Dura, and Kyah Z. Carson.  Buxton alleges that Defendants lied in order to collect on a debt he did not owe and misused his personal information in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, the Michigan Regulation of Collection Practices Act, Mich. Comp. Laws § 445.251, *et seq.*, and the Michigan Occupational Code, Mich. Comp. Laws § 339.901, *et seq.*

On August 9, 2022, summonses for Harris-Martin, Clemons, and Carson were returned executed.  (ECF No. 5.)  After these defendants failed to answer or otherwise respond, the Clerk of Court entered default against them on August 10, 2022.  (ECF No. 7.)  On August 24, 2022, summons for Pope was returned executed.  (ECF No. 8.)  After Pope failed to answer or otherwise respond, the Clerk of Court entered default against him on August 25, 2022.  (ECF No. 10.)  On January 5, 2023, summonses for HAM, DOWAR, and Warburton were returned executed.  (ECF

No. 17.) After these defendants failed to answer or otherwise respond, the Clerk of Court entered default against them on January 26, 2023. (ECF No. 21.) Buxton voluntarily dismissed Mercer and Dura as defendants on January 9, 2023. (ECF No. 19.) Before the Court is Buxton's motion for default judgment on the FDCPA and DPPA claims against HAM, DOWAR, Warburton, Harris-Martin, Clemons, Pope, and Carson (ECF No. 22).

## I. FACTUAL BACKGROUND

Buxton is a Michigan resident. (Compl. ¶ 9, ECF No. 1.) "On or about December 5, 2011," Buxton took out a payday loan for $575.00 from Check 'N Go ("CNG") in Grand Rapids, Michigan. (*Id.* ¶ 51.) The money was "for personal, family, and household purposes." (*Id.*) After the loan went into default, Buxton's account was successively sold to various entities, the last of whom signed a settlement agreement extinguishing the debt. (*Id.* ¶¶ 52-59.) Buxton was later threatened with litigation over the debt by a different entity that had gotten his account information, but they signed a settlement extinguishing the debt as well. (*See id.* ¶¶ 60-61.) CNG's sale of Buxton's account ended up causing "information regarding the account along with Mr. Buxton's personal and financial information [to be] periodically and repeatedly sold and resold to various entities around the country." (*Id.* ¶ 62.)

Buxton alleges that Defendants "obtained [his] stolen account information along with [his] stolen personal and financial information." (*Id.* ¶ 63.) Defendants then tried to collect on the debt from 2011, even though it had been extinguished. (*See id.* ¶¶ 65-67, 71.) Starting "[o]n or about June 14, 2022," Buxton received several calls on his cell phone from the number 833-723-1493, informing him about "failed delivery attempts" and requesting that he call the number 866-584-1199. (*Id.* ¶ 64.) "On or about June 16, 2022," Buxton answered a call from the 833-723-1493 number and spoke to someone who said his name was "Trevor Langston." (*Id.* ¶ 65.) Langston claimed that he worked for a law firm, "TCS & Associates," that buys debts and sues to collect

them. (*Id.*) He said that CNG had hired TCS to sue Buxton over an unpaid payday loan, and he provided the account number of the 2011 loan. (*See id.* ¶¶ 51, 65.) Langston claimed that "[a] 'court date' had already been 'issued' for Mr. Buxton" and "[a]n 'estimated judgment' in the amount of $1,231.90 was going to be entered by the court against Mr. Buxton." (*Id.* ¶ 65.) He also claimed that "Buxton was going to be criminally charged with 'malicious intent to defraud a financial institution.'" (*Id.*) However, he said that Buxton could avoid court proceedings by immediately paying $739.14. (*Id.*) He also explained that Buxton's payment "would show up on [his] bank statement as either Titan Capital Services or Hartin Asset." (*Id.*)

"On June 22, 2022 . . . Buxton authorized a payment of $50.00 to defendants by debit card, which defendants caused to be deposited in a Merchant Account maintained in the name of 'Hartin Processing,' located in New York, telephone number 866-584-1199." (*Id.* ¶ 66.) The next day, Buxton received an email from "Titan Capital Services" that included a payment authorization form titled "Hartin Processing." (*Id.* ¶ 67; Payment Authorization Form, ECF No. 1-1, PageID.35-36.) However, Buxton did not sign the form. (Compl. ¶ 67.)

Buxton alleges that Defendants violated several provisions of the FDCPA by trying to collect an extinguished debt, repeatedly calling him, making various misrepresentations, threatening fake legal action, and not providing proper notice, among other things. (*See id.* ¶ 137.) Buxton provides the following allegations to connect the various defendants to this debt collection attempt. "On April 26, 2016, Mr. Warburton registered with the Clerk of Erie County, New York to do business using the assumed name 'Titan Capital Services' . . . ." (*Id.* ¶ 17.) "On December 23, 2021, Mr. Warburton registered the internet domain www.TitanCapitalServices.com, which links to an active debt collection website that describes Titan Capital Services as a debt collection agency." (*Id.* ¶ 18.) The site also lists 866-584-1199, the number mentioned in the phone calls,

3

as a contact number. (*Id.*) "On December 27, 2021, Mr. Warburton registered the internet domain www.HartinAssetManagement.net, which links to an active debt collection website that describes HAM as a debt collection agency." (*Id.* ¶ 19.) This site also lists 866-584-1199 as a contact number. (*Id.*) HAM's registered address "has been the residential address of defendant Jamal D. Harris-Martin." (*Id* ¶ 10.) Defendant DOWAR's registered address "is the residential address of defendant Derrick C. Warburton II." (*Id.* ¶ 14.)

Buxton alleges that all defendants are debt collectors. (*Id.* ¶¶ 10, 14, 16, 24, 27, 33, 39.) Each defendant allegedly "uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts," and "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." (*Id.*) Buxton alleges that HAM and DOWAR, "through [their] employees and agents, directly and indirectly, participated in the unlawful efforts to collect an alleged debt from [him]." (*Id.* ¶¶ 13, 15.) As to the individual defendants, Buxton describes Warburton as "an officer, member, manager, employee, and agent of HAM and DOWAR," Harris-Martin and Clemons as "officer[s], member[s], manager[s], employee[s], and/or agent[s] of HAM and DOWAR," Pope as "an employee and/or agent of HAM and DOWAR," and Carson as "an employee and agent of HAM and DOWAR." (*Id.* ¶¶ 16, 24, 27, 33, 39.) Furthermore, Buxton alleges that each individual defendant

> created the collection policies and procedures used by HAM and DOWAR, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of HAM and DOWAR, (c) oversaw the application of the collection policies and procedures used by HAM and DOWAR, and their employees and agents, (d) drafted, created, approved and ratified the letters, communications, scripts and tactics used by HAM and DOWAR, and their employees and agents, to collect debts from consumers, including the letters, communications, scripts and tactics that were used to attempt to collect an alleged debt from Mr. Buxton as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by HAM and DOWAR, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of,

4

approved, participated in, and ratified the unlawful debt collection practices used by HAM and DOWAR, and their employees and agents, in attempts to collect an alleged debt from Mr. Buxton as stated in this complaint.

(*Id.* ¶¶ 22, 25, 28, 34, 40.)  He also claims that each individual defendant "directly and indirectly participated in the unlawful efforts to collect an alleged debt from [him]." (*Id.* ¶¶ 23, 26, 29, 35, 41.)

Buxton also alleges that Defendants, "[i]n connection with efforts to collect an alleged debt from [him], . . . obtained and used personal information regarding Mr. Buxton from an internet skip-tracing database" that "was derived in part from non-public motor vehicle records" without having any "permissible use" for that information.[1]  (*Id.* ¶¶ 117-18, 130.)  He further alleges that either Defendants, or "the entity that obtained [his] personal information from the database and disclosed [it] to defendants, made a false representation to the provider of the database to obtain [the] personal information." (*Id.* ¶¶ 126-27.)  Buxton contends that these actions violated the DPPA.  (*See id.* ¶ 139.)

## II. LEGAL STANDARD

Rule 55(b) of the Federal Rules of Civil Procedure governs the entry of default judgment:

(b) Entering a Default Judgment.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The

---

[1] Buxton alleges separately that Defendants also "obtained, disclosed, and used" his information, but it is unclear what the disclosure refers to.  (Compl. ¶ 129.)

5

> court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b). "Even after entry of default, the decision to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *see also United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983) ("Judgment by default is a drastic step which should be resorted to only in the most extreme cases.").

### III. ANALYSIS

Once default has been entered against a defendant, the Court must treat a plaintiff's well-pleaded facts as true, except for allegations relating to the amount of damages. *See, e.g., Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006); *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief"). This includes "exhibits attached to the complaint, public records, and items appearing in the record of the case . . . so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). It also includes "jurisdictional averments." *Ford Motor Co.*, 441 F. Supp. 2d at 846 (citing *Visioneering Constr. v. U.S. Fidelity & Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)).

As explained below, taking Buxton's well-pleaded allegations as true, he has failed to establish that the Court has personal jurisdiction over any defendant and has failed to state a claim

under either the FDCPA or the DPPA. Therefore, the Court will deny the motion for default judgment.

### A. Personal Jurisdiction

"Courts are obligated to consider subject-matter and personal jurisdiction . . . before entering default judgment." *United States v. Kuglin*, No. 11-2741, 2013 WL 870377, at *1 (W.D. Tenn. Mar. 7, 2013). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Buxton's claims arise under federal statutes. However, Buxton's complaint does not establish that the Court has personal jurisdiction.

"Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment." *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010); *see also Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) ("Without personal jurisdiction 'the court is powerless to proceed to an adjudication.'") (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Though Defendants have failed to respond to Buxton's complaint, that failure does not waive the Court's lack of personal jurisdiction over them. *See Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011); *Hartman v. Lowry*, No. 4:20CV2752, 2021 WL 1246864, at *8 (N.D. Ohio Mar. 26, 2021). Therefore, the Court's "responsibility to determine that it has the power to enter the default judgment" creates an "affirmative duty to look into its jurisdiction . . . over the . . . parties." *Hartman*, 2021 WL 1246864, at *8 (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Accordingly, "the Court is compelled to satisfy itself that the Complaint states a *prima facie* case for personal jurisdiction." *Hartman*, 2021 WL 1246864, at *8; *see also IOU Central, Inc. v. Division Avenue,*

7

*LLC*, No. 1:21-cv-811, 2022 WL 7344947, at *3-5, 7 (W.D. Mich. Oct. 13, 2022) (denying motion for default judgment against some defendants due to lack of personal jurisdiction).

"Plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, but 'that burden is "relatively slight" where, as here, the district court rules without conducting an evidentiary hearing.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017)). A prima facie case of personal jurisdiction "requires a plaintiff to establish, with reasonable particularity, sufficient contacts between the defendant and the forum state." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020). However, a "[p]laintiff may not establish personal jurisdiction solely by relying on conclusory statements." *Sheikh v. York*, No. 11-cv-15533, 2012 WL 1004853, at *2 (E.D. Mich. Mar. 26, 2012); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction."); *Nelson v. Atlas Apartment Homes, LLC*, No. 6:20-cv-879-Orl-78LRH, 2020 WL 10456790, at *3 (M.D. Fla. Aug. 10, 2020) (denying motion for default judgment because plaintiff's jurisdictional allegations were too conclusory to establish a prima facie case).

Buxton must establish that exercising personal jurisdiction over Defendants meets the requirements of both Michigan's long-arm statute and the Fourteenth Amendment's Due Process Clause. *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). However, the Court need only analyze due process because "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements.'" *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Due process requires that a nonresident defendant "have 'certain minimum contacts [with the forum

8

State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)) (alteration in original).

A defendant's contacts with a forum state can support either general or specific personal jurisdiction. *See Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019). General personal jurisdiction "turns on the defendant's generic connections to the State," such as "that it resides there or regularly does business there." *Id.* Specific personal jurisdiction "turns on the defendant's case-related contacts to the jurisdiction." *Id.* Specific jurisdiction has three elements:

> First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*AlixPartners*, 836 F.3d at 549-550 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)).

Buxton's complaint contains no allegations about this Court's jurisdiction over Defendants, and his motion for default judgment contains no arguments about personal jurisdiction. General personal jurisdiction does not exist because Buxton does not allege that any defendant is a Michigan resident or has any general connections to Michigan. Furthermore, as explained below, the connections between Defendants and Michigan do not create specific personal jurisdiction for either of Buxton's claims.

The only potential connections between Defendants and Michigan in relation to either of Buxton's claims are the phone calls and email Defendants allegedly sent Buxton. However, Buxton has not established that these communications qualify as purposeful availment of the Michigan forum. Buxton indicates that he currently resides in Michigan, but does not indicate

whether he resided in Michigan when the calls and email occurred. Though he states that "the pertinent events took place" within "this judicial district" (Compl. ¶¶ 8-9), this allegation is too vague to establish that any particular event happened in the state. *See Lane v. DBI Servs., LLC*, No. 6:22-cv-00041-WWB-LHP, 2022 WL 17416689, at *2 (M.D. Fla. Aug. 5, 2022) (denying motion for default judgment because allegation that "a substantial part of the events or omissions giving rise to this action occurred within" the county was too conclusory to establish personal jurisdiction).

Even if Buxton resided in Michigan when Defendants contacted him, he has failed to establish purposeful availment because he does not allege that Defendants knew his location or purposefully contacted Michigan. Defendants called his cell phone number, but the complaint does not indicate whether that number had a Michigan area code. Defendants' email to him contained a line for Buxton's address, but the address itself is redacted, so the Court cannot determine if Defendants listed a Michigan address. Defendants knew the account number for Buxton's loan, but Buxton does not indicate whether this account information would have allowed Defendants to determine his address. "Given that Plaintiff is unable to show that Defendant[s] had knowledge that Plaintiff was located in Michigan, to hold that Defendant[s] intended to cause a consequence in Michigan would . . . . defeat the purpose of requiring jurisdiction to be based upon *purposeful* availment." *Pritz v. S. Cal. Edison Co.*, No. 13-10884, 2013 WL 3880209, at *4 (E.D. Mich. July 26, 2013); *see also Rice v. Karsh*, 154 F. App'x 454, 462 (6th Cir. 2005) ("Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court," as a defendant "would be subject to personal jurisdiction in any location where said email address could be accessed.").

10

Assuming Defendants' communications are the basis for personal jurisdiction, exercising personal jurisdiction over DOWAR, Harris-Martin, Clemons, Pope, or Carson would be improper because Buxton has failed to establish that any of these defendants were involved in the phone calls or email.  He claims that DOWAR, "through its employees and agents, directly and indirectly, participated in the unlawful efforts to collect an alleged debt from [him]."  (Compl ¶ 15.)  He similarly alleges that Harris-Martin, Clemons, Pope, and Carson "directly and indirectly participated in the unlawful efforts to collect an alleged debt from [him]."  (*Id.* ¶¶ 23, 26, 29, 35, 41.)  He also claims that each of these individual defendants "drafted, created, approved and ratified . . . the letters, communications, scripts and tactics that were used" on the phone call, and "had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used" in the communications with him.  (*Id.* ¶¶ 25, 28, 34, 40.)  All of these allegations are vague and conclusory statements, not well-pleaded facts indicating Defendants' particular roles in the communications with him.  Therefore, these allegations do not establish a prima facie case of personal jurisdiction.

In sum, Buxton has failed to establish that the Court has personal jurisdiction over any defendant.

### B. Failure to State a Claim

"[A] 'default judgment cannot stand on a complaint that fails to state a claim.'"  *Reid v. City of Detroit*, No. 18-13681, 2021 WL 3286677, at *3 (E.D. Mich. Aug. 2, 2021) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)).  Therefore, "[e]ntry of a default judgment is only warranted when there is a sufficient basis in the pleadings for a judgment against the defendant at issue." *Id.*; *see also Harrison v. Bailey*, No. 95–6263, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants.").  For a default judgment to be proper, "the

11

complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 WL 1242821, at *3 (E.D. Mich. Mar. 16, 2020). To survive a motion to dismiss, a complaint must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As explained below, default judgment is inappropriate here because Buxton's complaint fails to state a claim under either the FDCPA or the DPPA.

### 1. FDCPA Claim

Buxton alleges that Defendants violated several provisions of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g(a). Section 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Section 1692g(a) states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" certain information listed in the statute. For the purposes of these provisions, a "debt" is an "obligation or alleged obligation of a consumer" that is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

Buxton's complaint fails to state an FDCPA claim because it does not sufficiently allege that the loan he took from CNG is the type of debt that these provisions apply to. Buxton alleges that he "borrowed and used the funds for personal, family, and household purposes," but provides

12

no specifics beyond this conclusory statement. (Compl. ¶ 51.) District courts in the Sixth Circuit have repeatedly held that a plaintiff fails to state an FDCPA claim when his complaint quotes the statute's definition of "debt" but does not specify the debt's actual purpose. *See Walker v. Lyons, Doughty & Veldhuis, P.C.*, No. 1:18-cv-513, 2019 WL 1227792, at *2-3 (S.D. Ohio Mar. 15, 2019) (holding that allegation plaintiff took out debt "for personal, family, or household purposes" was too conclusory to state a claim); *Hutchins v. First Fed. Credit Control, Inc.*, No. 2:14-cv-510, 2015 WL 11123314, at *3 (S.D. Ohio Aug. 20, 2015) (holding that allegation plaintiff "incurred a personal debt" was too conclusory to state a claim); *Malone v. Cavalry Portfolio Servs., LLC*, No. 3:14-CV-00428-CRS, 2015 WL 7571881, at *3 (W.D. Ky. Nov. 24, 2015) (holding that allegation plaintiff used debt "for personal, family, or household purposes" was too conclusory to state a claim); *but see Currier v. PDL Recovery Grp., LLC,* No. 14-12179, 2017 WL 712887, at *13 (E.D. Mich. Feb. 23, 2017) (holding that allegation plaintiff's debt was "for personal purposes" was not conclusory).

Furthermore, outside of the Sixth Circuit, "the vast majority of courts have found that the conclusory statement that a debt was incurred for primarily personal, family, or household purposes is insufficient to state a claim under the FDCPA." *Walker*, 2019 WL 1227792, at *2; *see also Garcia v. Jenkins Babb, L.L.P.*, 569 F. App'x 274, 276 (5th Cir. 2014) (affirming dismissal because allegation that debt was "for personal, family, or household purposes" was too conclusory to state a claim); *Maleh v. United Collection Bureau, Inc.*, 287 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2018) (collecting cases where courts "concluded that plaintiffs who recite the statutory definition of 'debt' rather than plead facts regarding the debt's nature have not adequately pled an FDCPA claim"). Because Buxton has not explained what the debt was borrowed and used for, his conclusory allegation about the debt's nature is insufficient to state an FDCPA claim.

13

Buxton has also failed to state a claim against DOWAR, Harris-Martin, Clemons, Pope, or Carson for two additional reasons. First, as explained above, Buxton does not allege facts indicating that these defendants were in any way responsible for the phone calls and email. Because Buxton has not sufficiently linked these defendants to the communications with him, he has not established their liability under the FDCPA.

Second, Buxton has failed to state a claim against these defendants because he does not sufficiently allege that they are debt collectors. The provisions of the FDCPA that Buxton alleges these defendants have violated apply only to debt collectors. *See* 15 U.S.C. §§ 1692d-g; *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) ("As a matter of law, liability under §§ 1692d and 1692e can only attach to those who meet the statutory definition of a 'debt collector.'"). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "These statutory definitions do not focus on the particular conduct of the defendant giving rise to a plaintiff's claims," but instead focus on the defendant's principal purpose or regular conduct. *Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011).

Buxton alleges that DOWAR, Harris-Martin, Clemons, Pope, and Carson are debt collectors because they "use[] interstate commerce and the mails in a business the principal purpose of which is the collection of debts," and "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." (Compl. ¶¶ 14, 24, 27, 33, 39). However, to state a claim, Buxton must provide "accompanying facts that suggest the Defendants to be in the business, the principal purpose of which is the collection of any debts, or

14

that the Defendants regularly collect or attempts (sic) to collect . . . debts owed or due or asserted to be due or due another." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 901 (S.D. Ohio 2013) (internal quotation marks omitted) (omission in original). Courts have therefore held that plaintiffs fail to state a claim when they make a conclusory assertion that defendants are debt collectors without any accompanying facts. *See id.* at 901-02; *Deplae v. Reg'l Acceptance Corp.*, No. 3:09-cv-227, 2010 WL 2270785, at *3 (E.D. Tenn. June 3, 2010). By alleging that Defendants are in the business of debt collection and regularly collect debts, Buxton has done no more than simply state that Defendants are debt collectors. Reciting the entire statutory definition does not make the allegation any less conclusory.

In sum, Buxton has failed to state a claim against any defendant under the FDCPA.

### 2. DPPA Claim

The DPPA makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title," or to "make false representation to obtain any personal information from an individual's motor vehicle record." 18 U.S.C. § 2722. "Personal information" is "information that identifies an individual, including . . . [a] social security number, driver identification number, name, address . . . [or] telephone number." *Id.* § 2725(3). The DPPA authorizes suit against anyone "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." *Id.* § 2724(a).

Buxton has failed to state a claim under the DPPA because his allegations as to Defendants' violation of the statute are conclusory. First, his allegations do not support a plausible inference that Defendants knowingly obtained or used any personal information from a motor vehicle record to contact him about the loan. His loan information would not be available in his motor vehicle record. Moreover, Buxton also alleges that his "personal and financial information have been

15

periodically and repeatedly sold and resold to various entities around the country." (*Id.* ¶ 62.) If that is the case, it is not plausible to infer that Defendants obtained his information from a motor vehicle record.

Second, Buxton does not indicate what personal information Defendants obtained from his motor vehicle record or how they used it. Instead, he broadly alleges that Defendants "obtained . . . personal information" about him from a database containing such information and used it "[i]n connection with efforts to collect an alleged debt from [him]." (Compl. ¶¶ 117-18.) These allegations are vague and conclusory. A "[p]laintiff has the burden of proving that disclosure of the personal information was for a purpose not permitted under the DPPA." *Lucas v. Moore*, No. 2:18-cv-582, 2019 WL 9832007, at *2 (S.D. Ohio Mar. 21, 2019) (citing *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008)), *aff'd*, No. 19-4010, 2021 WL 2773936 (6th Cir. Jan. 20, 2021). Because Buxton has failed to allege sufficient facts from which to infer the use of his personal information from a motor vehicle record, he has failed to state a claim under the DPPA.

## IV. CONCLUSION

For the reasons stated, the Court will deny Buxton's motion for default judgment. The Court will enter an order consistent with this Opinion.

Dated: July 31, 2023 /s/Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE